UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIE DALLAS COLLINS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 3:20-CV-00767 |
| | ) (Crim. No. 3:17-CR-00036) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM OPINION**

On December 5, 2017, Petitioner Willie Dallas Collins pled guilty without a plea agreement to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and was later sentenced to 180 months imprisonment. He now seeks to set aside his conviction on the grounds that: (1) his designation as an Armed Career Criminal ("ACC") was improper; (2) his counsel was ineffective in failing to object to that designation and for other reasons; (3) the Government engaged in prosecutorial misconduct; and (4) his conviction is invalid in light of Rehaif v. United States, ___ U.S. ___, 139 S.Ct. 2191 (2019). The Government has filed a response (Doc. No. 38) to Collins's Motion (Doc. No. 1) as supplemented (Doc. No. 30), and Collins has filed a reply (Doc. No. 41). For the reasons that follow, Collins' original Motion and as supplemented will be denied.

**I. Factual Background**

The facts underlying Collins' offense of conviction were placed on the record at the plea hearing as follows:

> On May 24th, 2016, at 8:05 p.m. Clarksville police department Officer Z. Forfang responded to a shots-fired call at 148 Chapel Street in Clarksville, Tennessee. While enroute, dispatch advised that there were several calls about the shooting and that

four or five shots had been fired. Dispatch also advised that the subject in possession of the handgun was a black male wearing a red shirt and black shorts. While driving up to the crime scene, Officer Forfang observed a black male matching the subject's description.

The black male was later identified as Willie Collins, was standing in the street and appeared to be in duress because he was waving his arms above his head and yelling. When Collins spotted Officer Forfang, who was approaching in his squad car, Collins immediately turned away. Officer Forfang exited his vehicle and asked Collins to stop walking away and that he needed to speak to Collins. Officer Forfang's commands were not acknowledged, and Collins continued to walk away. Officer Forfang observed Collins slow his pace while he walked past a parked Impala, and then Collins continued walking away. Collins eventually stopped and subsequently consented to a pat-down, which revealed no weapons. Officer Forfang went back to the parked Impala and recovered a black Beretta, model M9, 9 millimeter caliber pistol, which was located on top of the rear passenger tire. Collins was detained at this time. A secondary search of the immediate area revealed 9 millimeter shell casings lying in the street in close proximity to where the handgun was located, as well as a car that sustained damage from the gunfire. Collins was transported to the Montgomery County booking.

Video surveillance was obtained. The video surveillance shows on May 24th, 2016, Collins, who is a convicted felon, brandishing a gun and firing several shots while standing in a cul-de-sac parking lot on Chapel Street in Clarksville, Tennessee. More specifically, the video surveillance revealed the following:

On May 24th, 2016, Witness LS was standing in the cul-de-sac on Chapel Street in Clarksville when Collins drove up in a black vehicle and parked. LS and Collins got into an argument and LS punched Collins in the face. LS then walked away. Collins can be seen walking into a residence at 164 Chapel Street. Moments later, Collins exited the residence and brandished a black firearm. The video clearly depicts Collins firing several shots in the direction of where LS walked. After firing the shots, Collins placed the – or paced the parking lot while still holding on to the black firearm – or black gun. Immediately prior to Clarksville Police Department Officer Forfang's arrival on scene, Collins can be seen walking up to a Chevy Impala where he placed an object on top of the rear wheel. Collins then held his hands up while he walked away.

(Case No. 3:17-cr-0035, Doc. No. 79, Transcript at 13-14).

At the conclusion of the foregoing recitation by Agent Benjamin Colkmire of the Bureau of Alcohol, Firearms an Tobacco, Collins was asked if those facts were correct. Collins said that they

were with the following addition/correction:

> The government didn't add in what actually took place when I pulled up. I had got surrounded by individuals that was in a gang, Five Deuce Hoovers. They made statements to the government saying that they was in the gang. And when they surrounded me and punched me in my face, I got – feared for my life. I was scared. And the camera showed that I walked out of the circle they had me in. And as I was going towards the residence, the witness L. Smith walked to his car to get his – his weapon that he had. And as I went to the house, that I did go to 164, I went in and a person in the – in the house handed me a firearm, telling me that L. Smith had got his firearm from his car. And then that's when I had returned out of the house and what had took place that was on the film. And – and – that's really what took place. And they know it.

(Id. at 16). With that clarification, the Court accepted those facts for purposes of the plea. The Court also informed Defendant that he could be deemed an ACC and, if so, his mandatory minimum sentence would be 15 years and that "it could go up to life." (Id. at 8). The Court then ordered a Presentence Report ("PSR").

The PSR indicated that Collins had numerous prior felony convictions dating back to 2000. (Case No. 3:17-cr-0035, Doc. No. 175, PSR ¶¶ 31, 32, 36, 39, 44). It calculated 14 criminal history points, to which 2 points were added because Collins was under a criminal justice sentence at the time of the instant offense. A total of 16 criminal history points placed Collins in Criminal History Category VI. The PSR also calculated the base offense level to be 24, to which 4 points were added because Collins possessed the handgun in connection with another felony, specifically firing shots at witness L.S. (Id. ¶¶ 13, 14).

The PSR also deemed Collins to be an ACC based on the following convictions: (1) a July 2000 conviction for possession with intent to deliver more than .5 grams of cocaine, in violation of Tenn. Code Ann. § 39-17-417(a)(4), a Class B felony; (2) a September 2001 conviction for possession with intent to sell cocaine, in violation of that same statute, and (3) a July 2014

3

convictions for robbery and attempted aggravated robbery, in violation of Tenn. Code Ann. §§ 39-13-401, 39-13-402, and 39-12-101, both Class C felonies. (Id. ¶ 19). As a consequence, Collins' Offense Level became 34, from which 3 points were deducted for acceptance of responsibility. With a Total Offense Level of 31 and a Criminal History Category VI, the advisory Guidelines range for imprisonment was 188 to 235 months.

Collins objected to his designation as an ACC and specifically the counting of the July 2000 controlled substances conviction. He argued that this conviction was not a qualifying predicate because (1) he received community corrections for that conviction and was only jailed after he violated the terms of his release; and (2) under Tennessee law, this crime did not "involv[e] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance as defined in 21 U.S.C. § 802." (Case No. 3:17-cr-0035, Doc. No. 59, Sent. Memo. at 6).

After lengthy discussions at the Sentencing Hearing on June 3, 2019, the Court overruled Collins' objection to his classification as an ACC. (Case No. 3:17-cr-0035, Doc. No. 76, Transcript at 6-12). The Court then sentenced Collins to 180 months imprisonment. This was the mandatory statutory sentence but below the advisory Guidelines range.

Collins appealed, arguing that this Court erred in finding his possession with intent to deliver .5 grams of cocaine conviction was a qualifying offense under the ACCA. Rejecting that argument, the Sixth Circuit wrote:

> Collins's sole argument on appeal is that Tennessee Code Annotated § 39-17-417 does not qualify as a serious drug offense because it criminalizes "attempt" offenses. Section 39-17-417(a)(4) states that a defendant may not "[p]ossess a controlled substance with intent to manufacture, deliver, or sell the controlled substance." Tenn. Code Ann. § 39-17-417(a)(4). His argument lacks merits with respect to his 2001 conviction because possession with intent to *sell* does not include an attempt offense. With respect to his 2000 conviction for possession with intent to *deliver*, Tennessee's

4

definition of "deliver" does encompass attempt crimes, defining the term as "the actual, constructive, or *attempted transfer* from one person to another of a controlled substance, whether or not there is an agency relationship." Tenn. Code Ann. § 39-17-402(6) (emphasis added). But the relevant federal definition of "[d]eliver" is nearly identical, defining the term as "the actual, constructive, or *attempted transfer* of a controlled substance or a listed chemical, whether or not there exists an agency relationship." 21 U.S.C. § 802(8) (emphasis added). Collins therefore has not shown that Tennessee's inclusion of an attempted transfer prevents his prior conviction under Tennessee Code Annotated § 39-17-417(a)(4) from being considered a serious drug offense for purposes of the ACCA.

United States v. Collins, No. 19-5664, Slip Op. at 6 (6th Cir. April 23, 2020).

Collins' Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 followed.

## II. Legal Discussion

"The law generally gives federal prisoners just one chance to overturn a final criminal judgment – by alleging any and all errors in a single motion to vacate under 28 U.S.C. § 2255." Hueso v. Barnhart, 948 F.3d 324, 326 (6th Cir. 2020). Nevertheless, "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." Regalado v. United States, 334 F.3d 520, 528 (6th Cir. 2003). Consequently, "to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). One who has failed to appeal a claim and therefore procedurally defaulted on that claim "must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." Id. (citing Bousley v. United States, 523 U.S. 614, 622 (1998)).

As noted at the outset, Collins' original petition has been supplemented by court-appointed counsel. "Generally, amended pleadings supersede original pleadings," Hayward v. Cleveland Clinic Found., 759 F.3d 601, 617 (6th Cir.2014), and "[t]hat rule applies in [habeas] cases as well, Calhoun

v. Bergh, 769 F.3d 409, 410 (6th Cir.2014).  However, the Sixth Circuit has "recognized exceptions to this rule where a party evinces an intent for the amended pleading to supplement rather than supersede the original pleading . . . and where a party is forced to amend a pleading by court order."  Braden v. United States, 817 F.3d 926, 930 (6th Cir. 2016).  Here, the intent is clear – the supplemental filings are just that.  They were not intended to replace Collins' *pro se* filings.  Indeed, the filings by counsel primarily summarize and attempt to clarify the arguments raised by Collins.  Accordingly, the Court considers all of those filings in analyzing Collins' claims.

Collins raises a number of arguments, only one of which was presented on direct appeal.  Apparently in an effort to avoid the procedural default issue, he couches most in terms of ineffective assistance of counsel.  That is, but-for ineffectiveness, counsel would have raised the issue, either before this Court or on appeal.

**A. "Illegal Enhancements"**

As his first ground, Collins argues that his sentence was "illegally enhanced" by the use of three prior convictions to designate him as an ACC.  Although only the 2000 conviction for the possession with intent to sell cocaine was raised on appeal, he now challenges the correctness of using any of the convictions to enhance his sentence.  Collins' position presumably is that he is actually innocent of being an ACC and thus he has not procedurally defaulted this claim.

As a preliminary matter, Collins argues that "deliver" under Tennessee law includes an "attempt to deliver," which is "the least culpable act criminalize[d] by" the relevant statute. (Doc. No. 1 at 19). Because the Tennessee judgments for his controlled substances convictions listed only the statue (§ 39-17-417) but not a specific subpart, Collins argues he should be deemed to have only *attempted* to sell or distribute.  This argument goes nowhere because it was specifically rejected by

6

the Sixth Circuit. True, that court referenced subsection (a)(4) of the statute (even though the subsection was not listed on the judgment), but this does not change these indisputable facts identified by the Sixth Circuit: (1) intent to sell does not include an attempt offense under the Tennessee statue; and (2) Tennessee's definition of "deliver" encompasses attempt crimes but defines it almost identically to the federal statute, 21 U.S.C. § 802(8).

"'It is well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on appeal absent highly exceptional circumstances, such as an intervening change in the law.'" DuPont v. United States, 76 F.3d 108, 110 (6th Cir. 1996) (quoting Giraldo v. United States, 54 F.3d 776 (6th Cir. 1995)). There are no such circumstances here.

Consideration of Collins' armed robbery conviction does not change things. The judgment for that conviction does not indicate the statutory provision violated, but it does indicate that Collins was initially charged with aggravated robbery, a class B felony in Tennessee that was reduced to robbery, a class C felony. The judgment also indicates that Collins was sentenced to 6 years imprisonment in the Tennessee Department of Corrections ("TDOC") for that crime. (Doc. No. 57-2).

Collins cites two out-of-circuit cases for the proposition that a conspiracy to commit robbery is not a violent crime. After those cases were decided, the Supreme Court issued Johnson v. United States, 135 S. Ct. 2551 (2015) which held that the residual clause of the definition of "violent felony" in the ACCA was unconstitutionally vague, and this meant that conspiracy to commit robbery would not suffice as a predicate offense. The Supreme Court later held in United States v. Taylor, 142 S. Ct. 2015 (2022) that attempted Hobbs Act robbery does not categorically qualify as a crime of violence.

7

In Montgomery Criminal Court Case no. 2012-CR-1197 Collins was charged in Count Five with robbery. He did not plead guilty to conspiracy. Further, while he also pled guilty to attempted aggravated robbery in that case as alleged in Count Six, this conviction was not necessary for the ACC enhancement because of the robbery conviction and the two controlled substance offense convictions. Robbery under Tennessee law is unquestionably a qualifying conviction for purposes of the ACCA. As the Sixth Circuit recently observed:

> Tennessee defines "robbery" as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). We have repeatedly considered that offense categorically a violent felony. That is so, we have explained, because Tennessee robbery requires the use or threat of physical force with the requisite knowing or purposeful mens rea. United States v. Mitchell, 743 F.3d 1054, 1060 (6th Cir. 2014); see also Southers, 866 F.3d at 367; United States v. Belcher, 40 F.4th 430, 431 (6th Cir. 2022), cert. denied, ___ U.S. ___, 143 S. Ct. 606, 214 L.Ed.2d 357 (2023).
>
> [Defendant] responds with two intervening Supreme Court decisions he says require a new approach. According to [defendant], those cases – Elonis v. United States, 575 U.S. 723, 135 S.Ct. 2001, 192 L.Ed.2d 1 (2015), and Borden v. United States, ___ U.S. ___, 141 S. Ct. 1817, 210 L.Ed.2d 63 (2021) – instruct that ACCA's definition of violent felony excludes offenses that are triggered when a defendant threatens physical force negligently. And, [defendant] adds, Tennessee robbery sweeps in negligent threats of force, citing State v. Witherspoon, 648 S.W.2d 279 (Tenn. Crim. App. 1983), and Sloan v. State, 491 S.W.2d 858 (Tenn. Crim. App. 1972). But here again, our precedent forecloses [defendant's] argument. See Belcher, 40 F.4th at 432 (referencing Witherspoon, 648 S.W.2d at 281, and Sloan, 491 S.W.2d at 861). Throughout the "long history" of Tennessee's robbery statute, "not once" has a Tennessee court construed the fear element to encompass instances where a defendant negligently caused the victim fear. Id. at 431–32; see also United States v. Hubbard, No. 21-6219, 2023 WL 319604, at *2 (6th Cir. Jan. 19, 2023).

United States v. Campbell, No. 22-5567, ___ F. 4th ___, 2023 WL 5124819, at *2 (6th Cir. Aug. 10, 2023).

That same precedent binds this Court. Likewise, the Sixth Circuit's ruling on direct appeal is the law of the case in regard to the use of Collins' drug convictions as predicate ACCA crimes.

8

Accordingly, he is not entitled to relief on his assertion that his sentence was "illegally enhanced."

## B. Ineffective Assistance of Counsel

Collins raises a number of ineffective assistance of counsel claims, some of which overlap with his contention that he was wrongly designated an ACC. To the extent there is such overlap, the Court relies primarily on the foregoing discussion and considers only the additional ways Collins believes his counsel was ineffective.

A criminal defendant is guaranteed the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686–87 (1984). "[T]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [or plea proceedings] cannot be relied on as having produced a just result." Id. at 686.

"Defendants claiming ineffective assistance must establish two things. First, that the attorney's performance fell below "prevailing professional norms. And second, that the attorney's poor performance prejudiced the defendant's case." Monea v. United States, 914 F.3d 414, 419 (6th Cir. 2019) (citing Kimmelman v. Morrison, 477 U.S. 365, 381 (1986)). "Proving prejudice is not easy" because the petitioner is confronted with the "high burden" of demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (citing Davis v. Lafler, 658 F.3d 525, 536 (6th Cir. 2011)). In the context of guilty pleas, "a defendant must show the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, 566 U.S. 156, 163 (2012). Importantly, "the Strickland performance standard does not require an attorney to raise every non-frivolous issue on appeal." Carver v. Straub, 349 F.3d 340, 348 (6th Cir. 2003) (citing Jones v. Batnes, 463 U.S. 745,

751 (1983)).

*1. Ineffectiveness at Sentencing*

Collins claims that his counsel was unprepared for the sentencing hearing. He notes her statement during the hearing that "there wasn't any case law to her argument yet," and this Court's response that "there is law out there on this issue." (Doc. No. 1 at 23). This exchange, however, must be read in context.

Defense counsel argued that, because Collins did not serve more than twelve months imprisonment on one his drug offenses, that conviction should not count as a "serious drug felony" in light of a recent change to the First Step Act. Although counsel stated that she had found no cases to support this position, the Court's research revealed that the Fourth Circuit had decided that issue in United States v. Edwards, 767 F. App'x 546 (4th Cir. 2019). At the conclusion of the hearing, the Court expressed that it was "a bit disappointed" that the Edwards case was not brought to its attention, but that disappointment was directed at both defense counsel and counsel for the Government. (Case No. 3:17-cr-00036, Doc. No. 76, Sent. Tr. at 32).

Counsel's failure to discover Edwards – an unpublished, out-of circuit decision issued just five days before sentencing – hardly rises to the level of ineffectiveness. Besides, Collins cannot show that counsel's alleged poor performance prejudiced his case because Edwards held that the new language in the First Step Act "amended only the Controlled Substances Act's definition of 'serious drug felony,' not the language of the ACCA." 767 F. App'x at 547. This holding was totally contrary to Collins' position.

*2. Ineffectiveness on Appeal*

Collins claims that counsel was ineffective on appeal because she did not file a reply brief.

10

Collins also appears to claim that counsel was ineffective because he brought the Sixth Circuit's decision in Havis to her attention but she did not properly brief it, and counsel did not challenge the Government's reference to the subsections of the Tennessee Code when the state court judgments did not reference those subsections. For reasons already stated, Collins' argument about the reference to subsections does not matter because he has not shown prejudice. His remaining arguments fail as well.

The filing of a reply brief is optional, not mandatory, under the Federal Rules of Appellate Procedure. Specifically, Rule 28 provides "[t]he appellant *may* file a brief in reply to the appellee's brief." FRAP 28(c) (emphasis added).

As for the supposed failure to brief Havis, the Sixth Circuit opinion on Collins' direct appeal reflects that counsel did, in fact, "cite[] United States v. Havis, 927 F.3d 482 (6th 2019) (en banc) (per curiam), in support of his challenges to the ACCA enhancement as well as his challenge to the career-offender enhancement." United States v. Collins, No. 19-5664, Slip Op. at 4. However, the Sixth Circuit found Havis to be inapposite because it "was based upon our conclusion that the Sentencing Commission did not have the authority to include attempt crimes in 'controlled substance offense under the Sentencing Guidelines by referring to such crimes only in the guideline's commentary rather than in the guideline itself. 927 F.3d at 368-87. That holding has no bearing on Congress's authority to define 'serious drug offenses' in federal statutes." Id. Because Havis was discussed on direct appeal and is the law of the case, Collins cannot now claim that counsel was ineffective in failing to argue Havis.

### 3. *Ineffectiveness Post-Appeal*

Collins also contends that counsel was ineffective because she sent him a letter dated May

11

15, 2020, "expressing her opinion not to appeal the decision by [the] Court of Appeals." (Doc. No. 1 at 26). This was not ineffectiveness of counsel.

A defendant does not have a constitutional right to pursue a petition for a writ of certiorari, Ross v. Moffitt, 417 U.S. 600, 617 (1974) nor does he or she have a constitutional right to counsel to pursue discretionary [ ] appeals or applications for review in [the Supreme] Court," Wainwright v. Torna, 455 U.S. 586, 587 (1982). Consequently, "[w]here the defendant has no right to counsel, he cannot be deprived of the effective assistance of counsel." Washpun v. United States, 109 F. App'x 733, 735 (6th Cir. 2004). And, "[b]ecause defendants are not constitutionally entitled to the assistance of counsel in preparing petitions for certiorari," this "means that even the failure to file a petition for certiorari cannot amount to constitutionally ineffective assistance of counsel[.]" Harper v. United States, 792 F. App'x 385, 391 (6th Cir. 2019) (quoting Nichols v. United States, 563 F.3d 240, 242 (6th Cir. 2009)).

**B. Prosecutorial Misconduct**

"On habeas review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct was 'so egregious so as to render the [proceedings] fundamentally unfair.'" Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997) (quoting Cook v. Bordenkircher, 602 F.2d 117, 119 (6th Cir. 1979)). The harmless error standard applies, with the primary consideration being the fairness of the proceedings and not the "'culpability of the prosecutor.'" Id. (quoting Serra v. Mich. Dept. of Corr., 4 F.3d 1348, 1355 (6th Cir.1993). In making the determination whether prosecutorial misconduct occurred, the totality of the circumstances are relevant. Washington v. Hofbauer, 228 F.3d 689, 708 (6th Cir. 2000).

Collins raises several actions by the Government which he claims show prosecutorial

misconduct. None comes close to rising to that level.

First, and has already been noted, he complains that the controlled substance judgments from the Tennessee courts did not contain the subsection he allegedly violated, yet the Government referenced subsection (a)(4). Similarly, the robbery judgment did not list the statute of conviction yet the Government referenced Tenn Code Ann. §§ 39-14-401 and 402.

Turning first to the controlled substances convictions, Tenn. Code Ann. § 39-14-417 provides in relevant part:

> (a) It is an offense for a defendant to knowingly:
>
>> (1) Manufacture a controlled substance;
>>
>> (2) Deliver a controlled substance;
>>
>> (3) Sell a controlled substance; or
>>
>> (4) Possess a controlled substance with intent to manufacture, deliver or sell the controlled substance.

Tenn. Code Ann. § 39-17-417(a). Beyond that, the statute then lists the assorted penalties for each of the four provisions.

Here, the 2001 judgment indicated that Defendant violated Section 39-17-417 "possession cocaine – sell" and the 2000 Judgment indicated he violated the same statute by "possession with intent to deliver over .5 grams cocaine." (Case No. 3:17-CR-00036, Doc. No. 57-1, 57-3). Both are clearly references to subsection (a)(4) because Collins was not alleged to have manufactured, distributed, or sold the cocaine. The Sixth Circuit clearly understood as much on direct appeal by noting that although "the judgment[s] of conviction show[] that he was convicted under Tennessee Code Annotated § 39-17-417 . . ., it is clear that Collins was convicted under Tennessee Code

13

Annotated § 39-17-417(a)(4)[.]" Collins, No. 19-5664, Slip op. at 3.

Throughout his filings, Collins repeatedly suggests that he may have only "attempted" to sell or distribute, but that is not borne out by the judgments. Moreover, the controlling statute – § 39-17-417 – mentions "attempt" only once and that is in relation to whether a defendant should be considered a "habitual drug offender" subject to enhanced penalties under state law.

Collins' complaint about the Government referencing the Tennessee statute in relation to his robbery conviction in Count 5 of the state court judgment fares no better. Tenn. Code Ann. § 39-14-401 is Tennessee's robbery statute, and Tenn. Code Ann. § 39-14-402 is its aggravated robbery statue. The judgment at issue (Doc. No. 57-2) clearly shows that Collins was charged with aggravated robbery and pled guilty to robbery and this necessarily was in violation of the statutes relied upon by the Government.

Collins also suggests that the Government engaged in misconduct by relying on the original judgment relating to the robbery charge when that judgment was later corrected or modified. This matters not a bit because the corrected judgment merely reflected that he had been sentenced to time served of 862 days. Even with that "correction," it remains true that Collins was charged with and pled guilty to a "violent felony" that could result in imprisonment of more than one year. This is what mattered.

**C. Rehaif Claims**

Collins raises Rehaif error as both a substantive claim and an ineffective assistance of counsel claim. Either way, his Rehaif claims fail.

Rehaif was decided while Collins' case was on direct appeal. There, the Supreme Court held that, in order to convict a defendant for being a felon in possession, the government was required to

prove not only that defendant was in possession of a firearm, but also that he knew he was a felon when he possessed the firearm. However, "Rehaif is a case of statutory interpretation; it did not establish a new rule of constitutional law." United States v. Gray, No. 20-3523, 2021 WL 2026929, at *2 (6th Cir. May 19, 2021). For this reason, a number of appellate courts have found that the holding is not retroactive to cases on collateral review, at least with respect to those that have proceeded beyond the initial round. See e.g. Mata v. United States, 969 F.3d 91 (2d Cir. 2020); In re Palacios, 931 F.3d 1314, 1315 (11th Cir. 2019); In re Sampson, 954 F.3d 159, 161 (3d Cir. 2020).

Although the Sixth Circuit has yet to definitively address the issue in a published opinion, the court, "in two unpublished decisions, has determined that Rehaif applies retroactively on collateral review." Juarico-Cervantes v. United States, No. 22-1497, 2023 WL 3597251, at *3 (6th Cir. May 23, 2023) (citing Baker v. United States, 848 F. App'x 188, 189 (6th Cir. 2021); Kelley v. United States, No. 20-5448, 2021 WL 2373896, at *2 (6th Cir. Feb. 5, 2021)) Canvassing the law in the area, this Court recently reached the same conclusion, at least where, as here, the Rehaif claim is brought in an initial and not a successive petition. Franklin v. United States, No. 3:10-CR-00055, 2023 WL 2466355, at *3–4 (M.D. Tenn. Mar. 10, 2023).

The conclusion that Rehaif may be applied retroactively in this case, however, does not mean that Collins is entitled to relief. After all, "Rehaif did not graft onto § 922(g) an ignorance-of-the-law defense by which every defendant could escape conviction if he was unaware of this provision of the United States Code." United States v. Bowens, 938 F.3d 790, 797–98 (6th Cir. 2019). "If a person is a felon, he ordinarily knows he is a felon" and "[i]n a felon-in-possession case where the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb." Greer v. United States, ___ U.S. ___, 141 S. Ct. 2090, 2097 (2021).

15

"[U]nder any standard of review there was overwhelming evidence that [Collins] knew he was a felon when he possessed the firearms at issue in this case." United States v. Schmidt, 792 F. App'x 521, 522 (9th Cir. 2020); see also United States v. Jawher, 950 F.3d 576, 580 (8th Cir. 2020) (noting that "[o]rdinarily, the Government will be able to point to evidence in the record demonstrating that a defendant knew he was convicted, preventing the defendant from showing a reasonable probability of a different outcome absent the error"); United States v. Williams, 946 F.3d 968, 974 (7th Cir. 2020) (collecting cases for the proposition that where defendants had served substantial prison terms for prior felony convictions, they could not plausibly contend they did not know they held the status of felon at time they possessed firearms). Collins had 14 Criminal History points, including at least 6 felony convictions. The PSR also reflects that Collins spent a substantial amount of time in the TDOC, as evidenced by his numerous infractions while incarcerated. (PSR ¶ 52). It is simply beyond the realm of possibility that Collins did not know he was a convicted felon when he pled guilty in this case. See, Watkins v. Dobbs, No. 22-5632, 2023 WL 5275057, at *2 (6th Cir. Feb. 14, 2023) (rejecting Rehaif claim where petitioner did not "show[] that it is more likely than not that no reasonable juror would have convicted him, given the reality that he has served several lengthy prison terms stemming from numerous felony convictions and sets forth no basis for concluding that he was unaware of his felon status at the time of his § 922(g) offense").

Finally, Collins argues there was Rehaif error because it was not shown that he knew the handgun he possessed had crossed a state line so as to make it federal crime. Recently, the Ninth Circuit considered and rejected the same argument:

> [W]hile other defendants have advanced the argument Walker advances, no court of appeals has ever agreed with that argument. Cases predating Rehaif have clearly articulated that there is no 'knowledge' aspect to § 922(g)'s jurisdictional element.

16

> See, e.g., United States v. Garcia-Hernandez, 803 F.3d 994, 997 (8th Cir. 2015) ("The mens rea requirement in § 924(a)(2) does not apply to the interstate-commerce element of § 922(g)(1)."); United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) ("A defendant's knowledge or ignorance of the interstate nexus is irrelevant."). And cases following Rehaif have not changed course. See, e.g., United States v. Trevino, 989 F.3d 402, 406 (5th Cir. 2021) (listing the elements of a § 922(g) conviction, noting their compliance with Rehaif, and not including knowledge that the firearm traveled *1241 in interstate commerce); United States v. Raymore, 965 F.3d 475, 484 (6th Cir. 2020), cert. denied, ––– U.S. ––––, 141 S. Ct. 2814, 210 L.Ed.2d 938 (2021) ("[P]roof that the firearm traveled through interstate commerce can satisfy the statute's nexus requirement.").

United States v. Walker, 68 F.4th 1227, 1240–41 (9th Cir. 2023).

The distinction in the knowledge requirement makes abundant sense because being a felon in possession is a status crime. To be convicted, a defendant ought to know he is a felon. And, a defendant who knows he is a felon ought not to have a gun, regardless of its pedigree.

Collins is entitled to no relief under Rehaif.

**D. Certificate of Appealability**

Under the Anti-Terrorism and Effective Death Penalty Act of 1996, "[a] certificate of appealability ["COA"] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A prisoner seeking a COA must prove 'something more than the absence of frivolity' or the existence of mere 'good faith' on his or her part." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). Instead, " '[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Id. (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Collins has not made that showing with respect to any of his claims and, accordingly, a certificate of appealability will not issue.

17

## III. Conclusion

On the basis of the foregoing, Collins' Motion to Vacate, Set Aside or Correct Judgment (Doc. No. 1) as supplemented (Doc No. 30) will be denied. Further, a certificate of appealability will not issue.

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE